**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| AMICA MUTUAL INS. CO., <br> *Plaintiff*, <br><br> v. <br><br> RICHARD M. COAN, TRUSTEE FOR BANKRUPTCY OF SHIRLEY WILLIAMS, <br> *Defendant*. | No. 3:17-cv-01043 (VAB) |

**RULING AND ORDER ON MOTIONS *IN LIMINE***

On June 23, 2017, Amica Mutual Insurance Company ("Amica" or "Plaintiff") filed a declaratory judgment action to determine the parties' rights and obligations under a Connecticut homeowner's insurance policy (the "Policy"), issued by Amica, for an insurance claim related to alleged damages from a fire at 1532 Park Avenue, Bridgeport, CT (the "Property"). Compl., ECF No. 1 (June 23, 2017); Am. Compl., ECF No. 63 (Apr. 22, 2019). Amica originally sued the policyowner, Shirley Williams, but when Ms. Williams passed away in December 2018, Richard M. Coan, the Bankruptcy Trustee for bankruptcy proceedings involving Ms. Williams's estate ("Defendant"), replaced her as the defendant. *Id.*; *see also* Suggestion of Death, ECF No. 49 (Feb. 14, 2019).

Before the jury trial, currently scheduled to begin on August 18, 2020, Mr. Coan filed one motion *in limine*, Mot. *in Limine*, ECF No. 83 (Feb. 6, 2020) ("Def.'s Mot."), and Amica filed five motions, Mot. *in Limine*, ECF Nos. 91–95 (Feb. 12, 2020) ("Pl.'s Mot.").

For the following reasons, Mr. Coan's Motion *in Limine*, ECF No. 83, is **GRANTED IN PART and DENIED IN PART**; Amica's Motions *in Limine,* ECF Nos. 91 and 92, are **DENIED;** and Amica's Motions *in Limine,* ECF Nos. 93, 94, and 95, are **GRANTED**.

1

As to Mr. Coan's motion, the following evidence will be excluded: any evidence of drugs or alcohol at the Property, the names and conduct of any witnesses to the fire, and the cause of the fire. The following evidence, however, will be permitted: evidence arguably probative of Ms. Williams's financial situation and motivations regarding her representations about the rental unit's value.

As to Amica's motions, evidence of Amica's application of depreciation will not be categorically excluded at this time, while evidence of Mr. Kopchyak's personal circumstances will be allowed, to the extent they may have distracted him and caused errors in his reporting. The following evidence, however, will be excluded: evidence of subrogation, any inadvertent disclosures covered by attorney-client privilege, and evidence about Amica's insurance reserves.

The Court's ruling, however, is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." *Luce v. United States*, 469 U.S. 38, 41 (1984).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Amica previously issued the Policy to Ms. Williams to cover the Property from December 30, 2015 to December 30, 2016. Am. Compl. ¶¶ 8–10.

On or about June 4, 2016, a fire occurred at the Property. *Id.* ¶ 13.

Ms. Williams filed a claim to Amica under the Policy for dwelling coverage, property coverage, and loss of use coverage because she allegedly "cannot rent out the third-floor unit due to the property damage incurred there as a result of the fire." *Id.* ¶¶ 14–15. Amica assigned the loss to independent adjuster Adam Kopchyak of A.E. Oberhaus. *Id.* ¶ 16.

Amica alleges that Ms. Williams and her representatives, public adjusters Jon Cotter and Richard Ouellete, presented contradictory amounts for the monthly amount paid by Loretta

Cooper (Ms. Williams's niece) for the rental of the third-floor unit at the Property, and did so intentionally "in an effort to inflate the amount received as the Fair Rental Value for the third-floor unit" under the loss of use claim. *Id.* ¶¶ 17–23. Amica alleges that Mr. Kopchyak received reports that Ms. Cooper was living in the third-floor unit either rent-free, paying $1,350.00 per month, or paying $1,800.00 per month. *Id.* ¶¶ 19–22.

According to Amica, the Policy "excludes coverage for an insured who has intentionally concealed or misrepresented any material fact or circumstance, engaged in fraudulent conduct, or made material false statements relating to the insurance provided under the Policy." *Id.* ¶ 24. Consequently, Amica alleges the contradictory statements made by Ms. Williams and her representatives nullifies coverage under the Policy. *Id.* ¶ 25.

On June 23, 2017, Amica filed this declaratory judgment action against Ms. Williams. Compl.

On February 14, 2019, Amica entered a notice on the docket suggesting that Ms. Williams had passed away. Suggestion of Death.

On March 26, 2019, counsel for Ms. Williams entered a notice on the docket that Ms. Williams had passed away on December 25, 2018, but that because of the bankruptcy proceedings, the bankruptcy trustee could be substituted as the Defendant in this case. Notice, ECF No. 53 (Mar. 26, 2019).

On April 16, 2019, following a hearing by telephone, the Court granted Amica's motion to substitute the bankruptcy trustee, Mr. Coan, as Defendant. Minute Entry, ECF No. 60 (Apr. 16, 2019); Order, ECF No. 61 (Apr. 16, 2019).

On April 22, 2019, Amica filed an Amended Complaint against Mr. Coan as trustee of the Property previously owned by Ms. Williams. Am. Compl.

## II.     STANDARD OF REVIEW

Motions *in limine* provide district courts the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce*, 469 U.S. at 40 n.2; *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008).

A court should only exclude evidence on motions *in limine* if the evidence is clearly inadmissible on all potential grounds. *Levinson v. Westport Nat'l Bank*, No. 09-cv-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013). The court also retains discretion to reserve judgment on some or all motions *in limine* until trial so that the motions are placed in the appropriate factual context. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).

## III.    DISCUSSION

Both parties seek to exclude evidence that they deem irrelevant or otherwise inadmissible under Rule 403 of the Federal Rules of Evidence. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Court will address each motion in turn.

### A. Defendant's [83] Motion *in Limine*

Mr. Coan seeks to preclude the following from admission at trial as irrelevant, confusing, and unduly prejudicial: (1) evidence that the Property was in foreclosure litigation at the time of the fire; (2) evidence that Ms. Williams filed for bankruptcy after the fire; (3) evidence that Mr. Coan is the Bankruptcy Trustee of Ms. Williams's estate; (4) evidence that marijuana, alcohol, and other drugs were reported to be present at the Property during and after the fire; (5) the names and conduct of any witnesses to the fire; and (6) the cause of the fire. Def.'s Mot. at 5.

Mr. Coan argues that "[t]here have never been any allegations that the loss itself was anything but accidental. . . . ," nor has the cause of the fire been pleaded as a reason to decline coverage. *Id.* at 5–6. In his view, the "only issue is whether Ms. Williams's statements and conduct after the fire were material misrepresentations, false, or fraudulent;" and evidence "not relevant to this very narrow issue would cause jury confusion, and would highly prejudice Defendant." *Id.* at 6.

Amica responds that because the litigation "revolves around" the representations of Ms. Williams or her representatives, her "financial situation at the time of her claim is germane." Pl.'s Obj. to Def.'s Mot., ECF No. 97 at 4 (Feb. 13, 2020). According to Amica, Ms. Williams's dire financial situation provides evidence of her potential motivation for providing material misrepresentations to Amica in order to gain additional insurance funds. *Id.* at 5. Amica contends that "the condition of the third-floor unit, including the presence of illegal substances, provides evidence that the unit was not rented as claimed." *Id.* Along with the presence of alcohol and drugs, names and conduct of witnesses to the fire, including of Ms. Cooper, Amica submits that the location and cause of the fire are "directly relevant to the condition of the third-floor unit at

5

the time" it was allegedly rented. *Id.* at 5–6. Amica asserts that "[t]he evidence that Defendant seeks to preclude is some of the foundation upon which Plaintiff disclaimed coverage." *Id.* at 6.

In reply, Mr. Coan emphasizes that this case is solely about the Fair Rental Value section of the Policy and certain statements allegedly made or attributable to Ms. Williams. Reply to Amica's Obj. to Def.'s Mot., ECF No. 98 at 1 (Feb. 17, 2020). Mr. Coan contends the contradictory statements "were caused solely and exclusively by the distracted, inaccurate reporting made by [Mr.] Kopchyak, not as a result of any statement by Ms. Williams." *Id.* at 2–3 (footnote omitted). Furthermore, Mr. Coan argues that the Policy covers the Fair Rental Value, irrespective of whether the third floor was actually rented, and not the actual amount of rent due or collected. *Id.* at 3–4.

The Court agrees, in part.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Under Rule 401, "the court's determination of what constitutes 'relevant evidence' is guided by the nature of the claims and defenses in the cause of action." *Ramos v. Trifone*, No. 3:11-CV-00679 (SALM), 2015 WL 6509114, at *2 (D. Conn. Oct. 28, 2015) (citing *Jean-Laurent v. Hennessey*, 840 F. Supp 529, 536 (E.D.N.Y. 2011)). Although the Policy covers only the Fair Rental Value, Am. Compl. ¶ 11, Amica has also alleged that the Policy allows them to disclaim coverage if the insured "intentionally . . . [c]oncealed or misrepresented any material fact or circumstance;" "[e]ngaged in fraudulent conduct;" or "[m]ade material false statements . . . relating to this insurance," *id.* ¶ 12.

Courts are permitted to "exclude [any] relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. "The prejudice

that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (citing *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)). Any evidence therefore "must also bear a reasonable resemblance to the allegations at issue." *Metcalf v. Yale Univ.*, No. 15-CV-01696 (VAB), 2018 WL 8060514, at *3 (D. Conn. April 25, 2018).

As an initial matter, there is no dispute that the fire was accidental. *See* Am. Compl. ¶ 1 (alleging that Ms. Williams made material misrepresentations or engaged in fraudulent conduct "relating to her insurance policy and claim with Amica"). "This is not an arson case," *see* Def.'s Reply at 1, but a case about the Property's Fair Rental Value and whether material misrepresentations relating to the insurance policy are attributable to Ms. Williams. Consequently, the names and conduct of any witnesses to the fire as well as the cause of the fire are neither relevant nor directly probative of Amica's claims that Ms. Williams or her representatives made material misrepresentations about the insurance policy relating to the Fair Rental Value. *See* Fed. R. Evid. 401. Furthermore, evidence about the cause of the fire may serve to confuse the jury, or unduly prejudice Ms. Williams by creating an inference that she was involved in the fire. *See* Fed. R. Evid. 403.

Second, the alleged presence of drugs or alcohol at the Property at the time of the fire are neither directly related to nor directly probative of Amica's claims regarding either the Property's Fair Rental Value or any alleged misrepresentations made by Ms. Williams or her representatives. More importantly, any possible probative value of drug-related evidence is substantially outweighed by the risk of prejudice to Ms. Williams. *See* Fed. R. Evid. 403; *cf. Anderson v. Scanlon*, No. 3:14-CV-00829 (VAB), 20187WL 3974994, at *4 (D. Conn. April 25, 2018) (granting defendant's motion *in limine* to exclude evidence of statements defendant made

7

about use of force during past arrests because "they are not directly probative of [plaintiff's] claims, and they carry a significant risk of unfair prejudice to [defendant].").

Evidence of Ms. Williams's financial situation, however, does have probative value, because this evidence makes it more or less probable that she or her representatives made material misrepresentations about rental payments received for the third-floor of the Property in order to potentially maximize the Fair Rental Value and claim with Amica. As a result, to the extent that there was evidence of the Property being in foreclosure litigation at the time of the fire, of Ms. Williams having filed for bankruptcy after the fire, and that Mr. Coan is the Bankruptcy Trustee of Ms. Williams's estate are probative of any motivation Ms. Williams may have had regarding the value of the rental unit.

Accordingly, Mr. Coan's Motion *in Limine*, ECF No. 83, is **GRANTED IN PART and DENIED IN PART.** The motion is granted with respect to evidence of drugs or alcohol at the Property and evidence about the names and conduct of any witnesses to the fire as well as the cause of the fire.

The drug-related evidence is properly excluded under Rule 403 for being unduly prejudicial, and evidence about the fire is excluded under both Rule 401 and Rule 403 for its minimal relevance and probative value, along with the likelihood of causing jury confusion.

The motion is denied without prejudice to renewal at trial with respect to the remainder of the evidence, evidence arguably probative of Ms. Williams's financial situation, and thus her motivations regarding any of her representations about the rental unit's value. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 937 F. Supp. at 287 ("[T]he Court will reserve judgment on the motion until trial when admission of particular pieces of evidence is in an appropriate factual context.").

### B. Plaintiff's [91] Motion *in Limine* Re: Amica's Application of Depreciation

Amica seeks to preclude the introduction of any evidence relating to the application of depreciation to the value of the loss as irrelevant and unduly prejudicial. Pl.'s Mot., ECF No. 91-1 at 3 (Feb. 12, 2020). Amica argues that "the valuation of this loss and/or damage to the Property" does not go to the issue of material misrepresentations or statements made by Ms. Williams or her representatives. *Id.*

Mr. Coan responds that "the evidence Amica seeks to exclude [regarding the application of depreciation] is not clear," but objects because evidence of depreciation could "bear upon critical issues of misrepresentation, materiality, bias and credibility." Def's Obj., ECF No. 99 at 2 (Feb. 17, 2020).

The Court agrees.

Amica has not specified what or how evidence of depreciation is irrelevant. The Court thus declines to adopt a blanket exclusion of all evidence relating to Amica's application of depreciation. *See, e.g.*, *Cruz v. United Auto. Workers Union Local 2300*, No. 3:18-CV-48 (GTS/ML), 2019 WL 3239843, at *26 (N.D.N.Y. Jul. 18, 2019) ("The Court, in its discretion, declines to rule on the admissibility of evidence where it does not have any clear indication of the particular evidence sought to be excluded or its intended use; without the specific evidence before it for examination, the Court certainly cannot determine whether such evidence would be inadmissible in all respects." (citation omitted)); *see also James v. RD America, LLC*, No. 3:16-cv-1445 (VAB), 2019 WL 3491493, at *3 (D. Conn. Aug. 1, 2019) ("Defendants have also failed to specify any particular evidence that they believe is irrelevant or prejudicial. Without any more information about specific evidence that Defendants wish to exclude, the Court declines to adopt a blanket exclusion of all such evidence at this time." (citation omitted)).

Accordingly, Plaintiff's Motion *in Limine*, ECF No. 91, is **DENIED** without prejudice to renewal at trial.

### C.  Plaintiff's [92] Motion *in Limine* re: Mr. Kopchyak's Personal Matters

Amica seeks to prohibit the introduction of any evidence concerning the personal matters of Mr. Kopchyak, its independent adjuster assigned to investigate Ms. Williams's loss, as irrelevant and unduly prejudicial. Pl.'s Mot., ECF No. 92-1 at 3 (Feb. 12, 2020). Specifically, Mr. Kopchyak suffered a death in the family after the June 4, 2016 fire. *Id*. According to Amica, any evidence of his personal matters "has no bearing" on either Amica's investigation or the material misrepresentations" attributed to Ms. Williams, and would confuse or mislead the jury and unfairly prejudice Amica. *Id.*

In response, Mr. Coan emphasizes that "the sole source of every statement upon which it relies in this case was delivered to Amica" by the third-party adjuster. Mr. Kopchyak. Def's Obj., ECF No. 100 at 1 (Feb. 17, 2020). According to Mr. Coan, Mr. Kopchyak "made his reports to Amica during a period when [he] was under the extraordinary stress of the death of his mother . . . which had followed closely after the death of his father[.]" *Id.* Mr. Coan contends that the alleged "[e]rrors made by Kopchyak in his reporting to Amica go to the very heart of Amica's claim that Williams made misrepresentations." *Id.*

The Court agrees.

To the extent personal circumstances distracted Mr. Kopychak and caused errors in his reports to Amica about what Ms. Williams or her representatives stated regarding the rental value of the Property's third-floor, is both relevant and probative of the underlying claim in this lawsuit—whether Williams or her representatives, in fact, made material misrepresentations about the amount of rent collected.

Accordingly, Amica's Motion *in Limine*, ECF No. 92, is **DENIED** without prejudice to any objection that may be raised at trial.

### D. Plaintiff's [93] Motion *in Limine* re Potential Subrogation

Amica seeks to preclude the introduction of evidence regarding any potential subrogation action available to Amica as irrelevant and unduly prejudicial. Pl.'s Mot., ECF No. 93-1 at 3 (Feb. 12, 2020). Amica argues that the issue of subrogation is not relevant to the issue of Ms. Williams's alleged misrepresentations because it only exists in the abstract. *Id*. Amica also submits that this evidence would "prejudice the Plaintiff as Defendant may argue that Amica could recoup insurance funds potentially issued to the Defendant." *Id.*

Mr. Coan asserts that subrogation issues "are not likely to arise if the court grants [his] motion in limine to preclude evidence of the names and post fire conduct of" any witnesses to the fire. Def.'s Obj., ECF No. 101 at 1 (February 17, 2020).

The Court agrees.

Because the Court will grant Mr. Coan's motion with respect to precluding evidence about the names and conduct of any witnesses to the fire, evidence about subrogation should not be an issue at trial. Furthermore, this evidence is not relevant, because any possible subrogation action by Amica does not make it more or less probable that Ms. Williams or her representatives made material misrepresentations related to the Property's Fair Market Value. *See* Fed. R. Evid. 401.

Accordingly, Amica's Motion *in Limine*, ECF No. 93, is **GRANTED**.

### E. Plaintiff's [94] Motion *in Limine* Re Inadvertent Disclosures of Privileged Documentation

Amica seeks to preclude the introduction of evidence regarding privileged communications unintentionally disclosed on or about March 23, 2018. Pl.'s Mot., ECF No. 94-1

11

at 5 (Feb. 12, 2020). Amica argues that "the inadvertently disclosed documentation is attorney client communications and work product directly related to Plaintiff's case in chief." *Id.* at 6.

In response, Mr. Coan asserts that he "is not able to discern from either the motion or the supporting memorandum the specific evidence being referenced." Def's Obj., ECF No. 102 at 2 (Feb. 17, 2020). In addition, Mr. Coan asserts that "the documents Amica produced in discovery were not the result of any inadvertence, and Amica has not complied with the rules for identifying properly any documents fro which it claims a privilege or protection." *Id.* at 4.

In reply, Amica restates that it previously alerted Mr. Coan to the specific inadvertent disclosures and requested their destruction on December 23, 2019. Pl.'s Reply, ECF No. 105 at 1 (Feb. 19, 2020). Amica also contends that it "supplied Defendant with a privilege log on December 26, 2019, specifically identifying the inadvertently disclosed privileged documentation," which are five sets of e-mails detailed in the attached Exhibit B. *Id.* Because it complied with the rules for identifying such privileged documentation, Amica argues that "the overriding interest of justice would be best served by relieving Plaintiff of its error." *Id.* at 2.

The Court agrees.

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). "The privilege's underlying purpose has long been 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

To determine whether an inadvertent disclosure waived the attorney-client privilege, courts consider:

> (1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery and the extent of the inadvertent disclosure; and (4) overreaching issues of fairness.

*Expert Choice, Inc. v. Gartner, Inc.*, No. 3:03-cv-00234 (TPS), 2007 WL 951662, at *3 (D. Conn. Mar. 27, 2007) (citing *Harp v. King*, 266 Conn. 747, 768–69 (2003) and *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985)); *see also* Fed. R. Evid. 502(b) (requiring "reasonable steps to prevent [inadvertent] disclosure" and "prompt[] . . . reasonable steps to rectify the error"). "[T]he party claiming the attorney-client privilege has the burden of establishing all essential elements," *Harp*, 266 Conn. at 770 (quoting *In re Horowitz,* 482 F.2d 72, 82 (2d Cir. 1973), *cert. denied*, 414 U.S. 867 (1973)).

In this case, there is a significant delay between March 23, 2018, when the inadvertent disclosure was made, and December 23, 2019, when Amica realized its mistake and provided an updated privilege log to Mr. Coan. *See* Ex. A: Letter from Attorney Donovan to Attorney Isaac, ECF No. 105-1 at 2 (Dec. 23, 2019); Ex. B: Amica's Privilege Log, ECF No. 105-2 at 2 (Dec. 26, 2019) (five sets of e-mails labeled as attorney-client privilege and work-product). Amica notes, however, that although the documents were produced in March 2018, the case has been delayed due to attempts at settlement, the death of Ms. Williams, and her bankruptcy filing, Pl.'s Mot., ECF No. 94-1 at 5, and discovery did not resume until the Court issued an amended scheduling order on November 18, 2019, *see* Scheduling Order, ECF No. 72 (Nov. 18, 2019). As a result, Amica argues that the Court can and should excuse the delay in the time taken to rectify the error.

The Court agrees.

13

Having considered this factor as well as the others, Amica has not waived the attorney-client privilege. As to the reasonableness of precautions taken, "occasional inadvertent disclosure of privileged material is inevitable in the modern era of complex, document-intensive litigation." *Harp*, 266 Conn. at 769. "The mere fact of disclosure does not establish that a party's precautions undertaken to protect the privilege[d] [material] were unreasonable." *Id.* at 773; *cf. DeSouza v. Park West Apts.*, No. 3:15-cv-01668 (MPS), 2018 WL 625010, at *3 (D. Conn. Jan. 30, 2018) (finding that the defendants' actions were not reasonable because the communication was in a public file). As to the scope of discovery and extent of inadvertent disclosure, the e-mails are duplicative and the inadvertent disclosure only occurred during one document production, while the parties were in settlement discussions. *See Expert Choice, Inc.*, 2007 WL 951662, at *10-11 (finding that a handful of inadvertently disclosed documents "pale[d] in comparison" to the over 180,000 pages of documents); *Lois Sportswear, U.S.A., Inc.*, 104 F.R.D. at 105 ("[O]nly 22 documents out of some 16,000 pages. . . are not claimed to be privileged."). Finally, overriding interests of fairness favors Amica, because "depriving a party of information in an otherwise privileged document is not prejudicial." *Id.* at 774 (citation omitted)

Accordingly, Amica did not waive the attorney-client privilege with respect to the set of documents which it inadvertently produced and subsequently recalled, and its Amica's Motion *in Limine*, ECF No. 95, is **GRANTED**.

### F.  Plaintiff's [95] Motion *in Limine* re Insurance Reserves

Finally, Amica seeks to preclude the introduction of any evidence concerning insurance reserves as irrelevant and unduly prejudicial. Pl.'s Mot., ECF No. 95-1 at 3 (Feb. 12, 2020). According to Amica, evidence of "[i]nsurance reserves are not relevant to a determination of the

14

issues presented in this matter," and "would unduly prejudice AMICA [by] informing the jury of any monies set aside by Amica." *Id*.

In response, Mr. Coan contends that "[o]nce again, no specific evidence or documents were referenced in the motion." Def.'s Obj., ECF No. 103 at 1 (Feb. 17, 2020). Mr. Coan objects because "there remains a potential for evidence of Amica's reserves to bear upon critical issues of misrepresentation, materiality, bias and credibility." *Id.* at 2.

The Court disagrees.

Insurance reserves are financial reserves held by an insurance company "to pay out claims on the insurance policies that it issues." *In re Tower Group Intern., Ltd. Secs. Litig.*, No. 13 Civ. 5852 (AT), 2015 WL 5813393, at *1 (S.D.N.Y. Sept. 18, 2015). Based on the parties' representations at this time, evidence of Amica's insurance reserves is not relevant to the narrow issue here: misrepresentations allegedly made by Ms. Williams or her representatives in connection to the Property's Fair Rental Value of the Property. *See* Fed. R. Evid. 401.

Accordingly, Amica's Motion *in Limine*, ECF No. 95, is **GRANTED**.

IV.    **CONCLUSION**

For the reasons explained above, the Court **GRANTS IN PART and DENIES IN PART** Mr. Coan's Motion *in Limine*, ECF No. 83.

As to Mr. Coan's motion, the following evidence will be excluded: any evidence of drugs or alcohol at the Property, the names and conduct of any witnesses to the fire, and the cause of the fire. The following evidence, however, will be permitted: evidence arguably probative of Ms. Williams's financial situation and motivations regarding her representations about the rental unit's value.

The Court **DENIES** Amica's Motions *in Limine,* ECF Nos. 91 and 92**,** and **GRANTS** Amica's Motions *in Limine,* ECF Nos. 93, 94, and 95.

As to Amica's motions, evidence of Amica's application of depreciation will not be categorically excluded at this time, while evidence of Mr. Kopchyak's personal circumstances will be allowed, to the extent they may have distracted him and caused errors in his reporting. The following evidence, however, will be excluded: evidence of subrogation, any inadvertent disclosures covered by attorney-client privilege, and evidence about Amica's insurance reserves.

The Court's ruling, however, is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." *Luce*, 469 U.S. at 41.

**SO ORDERED** at Bridgeport, Connecticut, this 19th day of June, 2020.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge